

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed January 10, 2025**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 13** |
| | § | |
| **Desma Nicole Rashidi** | § | **Case No. 24-32587-mvl13** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM THE
AUTOMATIC STAY**

1

Before the Court is Movant Credit Acceptance Corporation's ("**Credit Acceptance**" or the "**Movant**") *Motion for Relief from the Automatic Stay or, in the Alternative, Request for Adequate Protection* pursuant to 11 U.S.C. § 362 of the Bankruptcy Code (the "**Lift Stay Motion**" or the "**Motion**") filed on October 3, 2024 [ECF No. 24][1]. In response, Debtor Desma Nicole Rashidi (the "**Debtor**") field an Answer and Objection to Creditor's Motion for Relief from the Automatic Stay on October 16, 2024 [ECF No. 30]. The Court heard arguments from both parties during a preliminary hearing (the "**Hearing**") on October 22, 2024 [ECF No. 33]. At the Hearing, the parties agreed to go to a final hearing based solely on the pleadings, alongside any post-hearing briefings submitted by the parties. Subsequently, the Debtor filed a *Post Hearing Brief in Support of Denial of Movant's Motion for Relief from the Automatic Stay* (the "**Response**") on November 1, 2024 [ECF No. 35]. Finally, the Movant filed its *Brief in Reply to Debtor-Respondent's Post-Hearing Brief in Support of Denial of Movant's Motion for Relief from the Automatic Stay* (the "**Reply**") on November 8, 2024 [ECF No. 36]. Having considered the arguments, the Court hereby **GRANTS** the Motion for Relief from the Automatic Stay.

## I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 157 and 362 and the District Court's Standing Order of Reference dated August 3, 1984. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. § 1409(a).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed this case under Chapter 13 of the Bankruptcy Code on August 28, 2024. ECF No. 1. The Debtor also previously filed a case under Chapter 7 of the Bankruptcy Code on May 17, 2024, styled as Case No. 24-31449, in the Bankruptcy Court for the Northern District of

---

[1] All ECF No. references are herein made with respect to the docket in Case No. 24-32587-MVL.

Texas. Both cases primarily revolve around a single piece of collateral: a 2018 Chevrolet Impala (the "**Collateral**") purchased by the Debtor on March 20, 2023. ECF No. 24, Ex. 1.

To finance the purchase, the Debtor financed $20,069.03 of the purchase price and granted a security interest in the Collateral to Reliable Chevrolet II (TX), LLC (the "**Seller**"), which then assigned and transferred its rights in the Collateral to Credit Acceptance. *Id.* at pp. 1, 3. The contract contained an Annual Percentage Rate of 23.95%, totaling $16,209.85, thereby making the total amount owed by the Debtor to Credit Acceptance $38,989.88 after her initial down payment of $2,711.00. *Id.* at p. 1. The Motor Vehicle Retail Installment Sales Contract also contained a clause permitting Credit Acceptance to exercise its rights under the law if the Debtor were to default based on certain conditions, such as filing bankruptcy, also known as an *ipso facto* clause. *Id.* at p. 4.

On May 24, 2024, during her previous Chapter 7 case, the Debtor filed a Statement of Intent, declaring that she would retain the Collateral and enter into a reaffirmation agreement with Credit Acceptance (a "**Reaffirmation Agreement**"). No. 24-31449, ECF No. 11.[2] According to the Movant, counsel for Credit Acceptance sent the Debtor's counsel a Reaffirmation Agreement on June 12, 2024. ECF No. 36, p. 2, ¶ 8. The Debtor then attended her §341 Meeting of Creditors on June 18, 2024. *See* No. 24-31449. Still awaiting the Debtor's response, counsel for Credit Acceptance sent a reminder to the Debtor's counsel on June 26, 2024, stating that it still had not received a signed Reaffirmation Agreement. ECF No. 36, p. 2, ¶ 9.  The Debtor never returned a signed Reaffirmation Agreement. ECF No. 24, p. 2, ¶ 8. Additionally, the Debtor did not file a Motion to Redeem the Collateral either. ECF No. 24, ¶ 13. The Debtor ultimately received a

---

[2] For clarity purposes, any ECF No. references to the Debtor's previous Chapter 7 case will be preceded by the full case number.

discharge pursuant to 11 U.S.C. § 727 on August 21, 2024, and her case was closed on the same day. No. 24-31449, ECF Nos. 20, 22.

The Debtor then filed a subsequent Chapter 13 case *seven days* after her discharge in the Chapter 7 case on August 28, 2024. ECF No. 1. In the Debtor's current Chapter 13 Plan (the "**Plan**"), the Collateral is listed under the "Secured 1325(a)(9) Claims" section with a Scheduled Amount of $19,260.78 at a 9.5% interest rate. ECF No. 13, p. 3. Prior to confirmation, Credit Acceptance filed the Lift Stay Motion, alleging that the Debtor is "attempting to retain possession of personal property secured by a purchase money security interest which the Debtor did not redeem or reaffirm in the Chapter 7." ECF No. 24, p. 2, ¶ 15. Put simply, Credit Acceptance argues that because the Debtor did not reaffirm or redeem the Collateral in which Credit Acceptance holds a purchase-money security interest ("**PMSI**") in, she was not permitted to retain possession of the Collateral, pursuant to the explicit requirements of Section 521(a)(6) of the Bankruptcy Code. *See* ECF No. 28, pp. 6, 9 (noting that the Debtor gave a PMSI in the Collateral to Credit Acceptance, as reflected in the Certificate of Title). Therefore, the automatic stay in the Chapter 13 case should be terminated.

The Debtor's Response is multi-faceted. First, the Debtor argues that § 521(a)(6) is inapplicable in this case because the statute's plain text expressly applies to a debtor "in a case under chapter 7 of this title." ECF No. 35, p. 2. In other words, when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") and amended §521(a) to include (a)(6), it could have included language that would preclude a Chapter 13 debtor that was previously in a Chapter 7 from retaining such collateral if the debtor failed to reaffirm or redeem. *Id.* That language, the Debtor argues, is not included in § 521(a)(6) and therefore cannot be used against the Debtor, as she is currently a Chapter 13 debtor.

Second, the Debtor argues that the text of § 362(c)—another provision added in the BAPCPA amendments—establishes that Congress intended to remove automatic stay protections only for debtors who had a previous Chapter 7 that was *dismissed* within a 1-year period, not discharged. *Id.* at p. 3 (emphasis added); *see also* 11 U.S.C. § 362(c)(3). The Debtor contends that this specific distinction in the text protects debtors' personal property should they fail to reaffirm under § 524 or redeem under § 722 in a prior Chapter 7. Therefore, given the absence of any language in § 362 that would expressly remove automatic stay protections for debtors with previously discharged Chapter 7 cases, the Collateral in this case remains protected under § 362(a).

Third, the Debtor contends that the United States Supreme Court's holding in *Johnson v. Home State Bank* established that Congress did not intend to categorically "foreclose" a debtor's ability to file a Chapter 13 reorganization after having previously filed a Chapter 7, and any liens that survived a Chapter 7 discharge fall within the broad definition of a "claim" against the estate under § 101(5). ECF No. 35, p. 4 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991)). According to the Debtor, the broad and inclusive definition of "claim," coupled with the holding in *Johnson*, proves that Congress consciously chose not to prohibit serial "Chapter 20" filings. *Id.*[3] Therefore, a debtor that fails to reaffirm or redeem in a Chapter 7 case may still include any remaining obligation a secured creditor as a "claim" in a subsequent Chapter 13 plan. *Id.*

Finally, the Debtor notes that to follow the Movant's position would imply that *Johnson* was abrogated by the enactment of § 521(a)(6) without any evidence of Congressional intent to do so. *Id.* at pp. 4–5 (citation omitted).

---

[3] To clarify, the Court's reference to a "Chapter 20" filing refers to the situation in which a debtor files a Chapter 7 case, and then subsequently files a Chapter 13 case after the Chapter 7 case has concluded. *See, e.g.*, *In re Francis*, No. 14-42974-RFN, 2015 WL 139520, at *2 (Bankr. N.D. Tex. Jan. 7, 2015) (Nelms, J.) (noting that such filings are known to this day as Chapter 20 filings).

In its Reply, Credit Acceptance notes that before § 521(a)(6) was enacted, courts generally considered what the Debtor is attempting—which Credit Acceptance terms "redemption by installments"—bad faith. ECF No. 36, p. 4, ¶ 3. The Movant cites a variety of bankruptcy court decisions to illustrate that while *Johnson* does not *per se* prohibit a Chapter 20 filing, courts routinely analyze whether such serial filings are permissible. *Id.* (citing *In re Tittle*, 346 B.R. 684, 697 (Bankr. E.D. Va. 2006)). Credit Acceptance argues that this pre-BAPCPA factor-based analysis continues to be used to determine bad faith filings post-BAPCPA. ECF No. 36, pp. 4–5, ¶ 4. The Movant argues the current case provides a clear example of a bad faith Chapter 20 filing, and that the Debtor is attempting to "drive and pay", which the Bankruptcy Code and relevant Fifth Circuit case law expressly forbid. *Id.* at pp. 5, 9, ¶¶ 5, 15.[4]

Finally, the Movant argues that the Debtor's objective in filing her Chapter 13 is for the singular purpose of circumventing the requirements of her Chapter 7 case, and should be dismissed in bath faith as a "blatant attempt to avoid the consequences of failing to redeem or reaffirm the debt to [Credit Acceptance] in her Chapter 7 case." *Id.* at p. 9, ¶ 14. Therefore, this type of bad faith filing is grounds for terminating the automatic stay. *Id.* (citing *In re Merchant*, 256 B.R. 572 (Bankr. W.D. Pa. 2000)).

### III.   LEGAL ANALYSIS

In reaching its conclusion, the Court must first address the Movant's primary argument—the application of § 521(a)(6) to the current proceeding. The issue here is purely one of statutory interpretation. The question, at bottom, is can a debtor that failed to timely reaffirm or redeem

---

[4] Although Credit Acceptance refers to the Debtor's attempt to retain possession of the Collateral and pay it down through her Chapter 13 plan as the "drive and pay" option, bankruptcy courts have more consistently phrased this action as a "ride-through." *See, e.g., In re Sanders*, No. 11-51240, 2012 WL 692549, at *5 n.1 (Bankr. W.D. Tex. Mar. 2, 2012) (noting that courts have generally held that BAPCPA eliminated the "ride-through" option). The Court will likewise refer to this type of action as a "ride-through."

collateral in a Chapter 7 in accordance with § 521(a)(6), utilize the automatic stay under § 362 in a subsequent Chapter 13 to retain the collateral and cram down the secured creditor?

The question is a complex one, requiring the Court to analyze the functionality of the statutes involved, step-by-step, together with the principles underlying BAPCPA. As a threshold matter, however, the Court acknowledges that there are polarizing interpretations among its sister courts that have addressed the threshold question of how and when § 521(a)(6) applies towards a secured creditor's claim. As several bankruptcy courts have previously found, for § 521(a)(6) to come into play, the creditor must have "an *allowed claim* for the *purchase price*." *In re Donald*, 343 B.R. 524, 535 (Bankr. E.D.N.C. 2006) (emphasis added) (internal quotations omitted); *accord In re Steinhaus*, 349 B.R. 694, 703–07 (Bankr. D. Idaho 2006) (addressing whether there are "preconditions" that a creditor must satisfy before § 521(a)(6) can be applied). Section § 521(a)(6) is therefore "predicated upon a creditor's having '[1] an allowed claim [2] for the purchase price secured in whole or in part by an interest' in the collateral." *In re Rowe*, 342 B.R. 341, 347 (Bankr. D. Kan. 2006). The Court will briefly address these elements in turn.

The phrase "allowed claim" is not expressly defined in the Bankruptcy Code. The lack of statutory guidance has required courts to analyze whether § 521(a)(6) can be applied where the secured creditor has not filed a proof of claim." *Steinhaus*, 349 B.R. at 703. Section § 502 of the Bankruptcy Code dictates how a claim is "allowed": (1) a proof of claim is filed or deemed filed without objection; (2) a claim is "allowed" by the court after an objection is filed; or (3) the claim is estimated by the court through § 502(c). 4 *Collier on Bankruptcy* ¶ 502.01 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. Rev.2006). No matter which avenue a party traverses, "allowance of a claim requires that a proof of claim be filed under § 501 or be deemed filed." *Rowe*, 342 B.R. at 348.

In the Chapter 7 context, whether courts should require secured creditors to file proofs of claim—given that there is no statutory mechanism for deeming a Chapter 7 claim filed—remains hotly contested. *Compare Rowe*, 342 B.R. at 348–39 (holding that a literal interpretation of "allowed claim" leads to the type of "problematic" application that is "demonstrably at odds with the intent of [§ 521's] drafters."), *with Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 178–79 (E.D.N.C. 2008) (holding that neither the "absurdity exception" nor BAPCPA's legislative history "negate" a plain meaning interpretation of § 521(a)(6) that requires proofs of claim to be filed). This divide is even more readily apparent in "no-asset" Chapter 7 cases, like the Debtor's previous Chapter 7 case, where creditors are given notice by the Chapter 7 trustee that no dividend is anticipated, and it is unnecessary to file proofs of claim.[5] *See* No. 24-31449, *Chapter 7 Trustee's Report of No Distribution* (June 20, 2024).

Similarly, it remains undecided how to define what an allowed claim "for the purchase price secured in whole or in part" means. *Compare Donald*, 343 B.R. at 536–38 (holding that the term "purchase price" is a defined term in Black's Law Dictionary, and therefore would only apply to claims for the full purchase price, rather than a PMSI), *with Steinhaus*, 349 B.R. at 706–07 (relying on legislative history and holding that Congress drafted provisions with "loose" and "imprecise" language that plausibly allow for secured creditors to maintain claims under § 521(a)(6) with claims for less than the full purchase price).

---

[5] Bankruptcy Rule 2002(e) states that in a Chapter 7 case, "if it appears from the schedules that there are no assets from which to pay a dividend, the notice of the meeting of creditors may state . . . (2) that filing proofs of claim is unnecessary." Fed. R. Bankr. P. 2002(e)(2). In adherence to Bankruptcy Rule 2002(e), some courts have acknowledged that creditors may "choose" not to file claims in a bankruptcy case with no assets available for distribution, and that if the Chapter 7 trustee determines that there are no assets to distribute in a Chapter 7 case, the requirement to file a proof of claim is "meaningless.'" *Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.,* 852 F.3d 405, 410–11 (5th Cir. 2017) (citation omitted); *see also In re Mesa Bus. Park P'ship*, 127 B.R. 144, 148 (Bankr. W.D. Tex. 1991) ("Indeed, creditors in no-asset [Chapter 7] cases are not even required to *file* proofs of claim.").

Although these issues are scholarly, the Court nevertheless abstains from adopting a definitive interpretation as to either element, given that the Debtor has not based her objection on this portion of the text of § 521(a)(6).[6] Accordingly, the Court will focus on the two issues at the crux of this matter: (1) whether the Debtor violated § 521(a)(6) by retaining possession of the Collateral after the 45-day window to reaffirm or redeem the Collateral; and (2) if the Debtor violated § 521(a)(6), what remedies the Bankruptcy Code provides Credit Acceptance in the face of the Debtor's Chapter 13 filing.

### A. BAPCPA and the "Ride-Through" Option

Presuming that § 521(a)(6) applies in this case only establishes that Credit Acceptance has the statutory mechanism for seeking relief if the Debtor were to violate the requirements of the statute. The next logical step is determining whether the Debtor's continued possession of the Collateral, without reaffirmation or redemption, is statutorily prohibited under § 521(a)(6). The Court naturally starts with the statute's text.

Section 521(a)(6) of the Bankruptcy Code provides that the debtor *shall*:

[I]n a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in party by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
    (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
    (B) redeems such property from the security interest pursuant to section 722.

11 U.S.C. § 521(a)(6)(A)–(B).

As the Honorable Stacey G.C. Jernigan held in *Law*, aligning with Fifth Circuit precedent:

After BAPCPA, it became clear (if it was not already) that a debtor in Chapter 7 has three options for dealing with her personal property, such as a car, that is subject to a lender's lien: (a) she can **reaffirm** the indebtedness, under section 524 of the Bankruptcy Code; (b)

---

[6] The Court would note that the Debtor did not contest the Movant's claim in her Chapter 7 Schedules and would have been liable in the entirety of the debt had she fulfilled her stated intention to reaffirm. *See* No. 24-31449, ECF No. 11; *see generally* 11 U.S.C. § 524(c), (k).

she can **redeem** the vehicle by paying the lender the amount of its secured claim, pursuant to section 722 of the Bankruptcy Code; or (c) she can **surrender** the vehicle, pursuant to section 521(a)(2) and (a)(6).

*In re Law*, 497 B.R. 843, 850 (Bankr. N.D. Tex. 2013) (Jernigan, J.) (emphasis in original).

In *Law*, Chief Judge Jernigan acknowledged the pre-BAPCPA "debate" concerning whether the Bankruptcy Code provided a fourth "ride-through" option where a Chapter 7 debtor could simply keep their collateral and "make future contractual payments without reaffirming." *Id*. However, as Chief Judge Jernigan made clear, "BAPCPA seemed to eliminate [the ride-through option] with new language making clear that the automatic stay will lift if a [C]hapter 7 debtor does not timely file a Statement of Intent to Redeem or Reaffirm and timely act on the intended action." *Id*. This holding echoes what the Fifth Circuit previously clarified in *Johnson v. Sun Finance Company*—generally, "debtors are limited to the three options set forth in [§ 521]." 89 F.3d 249, 252 (5th Cir. 1996) [hereinafter *Sun Finance*].[7]

The Bankruptcy Courts for the Northern and Western Districts of Texas have acknowledged that both subsections 521(a)(2) and (a)(6) each have their own distinct "directives" towards debtors and "consequences" for debtors who fail to comply. *In re Seiffert*, No. 18-43114-MXM, 2019 Bankr. LEXIS 869, at *8 (N.D. Tex. Mar. 8, 2019) (Mullin, J.); *see also Francis*, 2015 WL 139520 at *4–5. Section 521(a)(2)—which more generally pertains to "debts which are secured by property of the estate" listed on an individual debtor's Schedules—mandates that a debtor "shall . . . file with the clerk a statement of his intention with respect to the *retention or surrender of such property* and, if applicable, specifying that . . . the debtor intends to redeem the

---

[7] The First, Seventh, and Eleventh Circuits have similarly held, especially in the § 521(a)(2) context, that the statute requires debtors to choose between reaffirmation, redemption, and surrender, and that BAPCPA effectively eliminated the ride-through option. *See Bank of Boston v. Burr* (*In re Burr*), 160 F.3d 348 (1st Cir. 1998); *see also In re Edwards*, 901 F.2d 1383 (7th Cir. 1990); *Taylor v. AGE Fed. Credit Union* (*In re Taylor*), 3 F.3d 1512 (11th Cir. 1993).

property, or that the debtor intends to reaffirm debts secured by such property." 11 U.S.C. § 521(a)(2)(A) (emphasis added). Likewise, § 521(a)(6) mandates that "not later than 45 days after the [§ 341 Meeting of Creditors]," debtors must either (A) enter[ ] into an agreement with the creditor pursuant to section 524(c) . . . ; or (B) redeem[ ] such property from the security interest pursuant to section 722." *Id.* at § 521(a)(6)(A)–(B).

Numerous bankruptcy courts have reiterated that these provisions, aligned with § 521's title, instill "duties" upon debtors to choose from a statutorily restricted set of options. *E.g.*, *In re McCray*, 578 B.R. 403, 411 (Bankr. E.D. Mich. 2017). As Chief Judge Jernigan previously established, under § 521(a)(2), the debtor must reaffirm, redeem, or state their intention to surrender the collateral. Under § 521(a)(6), the options are seemingly even more limited, as the statute requires that a debtor *timely* reaffirm the collateral under § 524(c) or redeem the collateral under § 722.

Failure to adhere to § 521(a)'s requirements under either provision triggers respective consequences as well. Section 521(a)(2) specifies that when a debtor fails to reaffirm, redeem, or surrender the collateral, the debtor's rights with regard to such property are not altered "except as provided in [§362(h)]." 11 U.S.C. § 521(a)(2)(B). Section 362(h), also added by BAPCPA, dictates that the automatic stay under §362(a) "is terminated with respect to personal property of the estate or of the debtor . . . and such property shall no longer be property of the estate if the debtor fails within the applicable time set by [§ 521(a)(2)]." *Id.* at § 362(h)(1). Thus, a debtor with an applicable security interest under § 521(a)(2) has 30 days to state their intention to reaffirm, redeem, or surrender their collateral—and then follow through on that statement of intention—or two consequences follow under § 362(h): (1) the automatic stay lifts as to that collateral, and (2) the collateral is no longer property of the estate.

Section 521(a)(6) follows a similar track as to noncompliant debtors, but with notable differences. First, § 521(a)(6) explicitly states that a debtor "shall . . . *not retain possession* of personal property" if the debtor fails to reaffirm or redeem the collateral in question. *Id*. at § 521(a)(6)(A)–(B) (emphasis added). Second, § 521(a) contains what courts have referred to as a "hanging paragraph" that provides:

> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.

11 U.S.C. § 521(a)(6)(*).[8]

While the provision does not reference § 362 in the same fashion as § 521(a)(2), § 521(a)(6)(*) makes clear that failure to reaffirm or redeem within 45 days of the § 341 meeting has the same two consequences: (1) the automatic under § 362(a) lifts as to that collateral, and (2) the collateral is no longer property of the estate. However, it also adds an additional consequence; failure to take timely action pursuant to § 521(a)(6)'s requirements allows creditors to take "whatever action" they are permitted to take under "applicable nonbankruptcy law." *Id.*

Neither provision allows a debtor to "knowingly shirk their duties" under § 521(a) by attempting a "ride-through" option instead. *Marquez*, 2017 WL 5438306 at *6. Rather, the "ride-through" option was eliminated when Congress effectively codified the Fifth Circuit's *Sun Finance* holding by enacting § 521(a)(6). *Francis*, 2015 WL 139520 at *3. Put simply, Chapter 7 debtors

---

[8] The Fifth Circuit has previously referred to an "unnumbered hanging paragraph" by using an asterisk, as seen in *McCoy*. *See, e.g., In re McCoy*, 666 F.3d 924, 932 n.3 (5th Cir. 2012) (referencing a similar hanging paragraph in § 523(a) by using § 523(a)(*)). The Court will adopt this reference as well.

cannot retain possession of personal property and continue making payments, and actively disregard the statute, given that Congress explicitly prohibited Chapter 7 debtors from doing exactly that. *Id.*

The only potential exception to this rule is what some courts have deemed the "backdoor ride-through," in which debtors "attempt to comply" with their respective duties under either subsection 521(a)(2) or (a)(6), but the ruling court refuses to approve reaffirmation or redemption. *Marquez*, 2017 WL 5438306 at *3 (citing *In re Baker*, 390 B.R. 524, 529–30 (Bankr. D. Del. 2008)). However, *Marquez* noted that, even if there was a "backdoor ride-through" option, it would apply in "very limited circumstances," and only when debtors had shown "substantial compliance" with § 521(a)(2)'s requirements. *Id.*

The facts in this case clearly indicate that the Debtor's continued possession of the Collateral is the exact type of attempt at a "ride-through" that § 521(a)(6) explicitly prohibits. As Credit Acceptance notes in its Reply, and as the docket reflects, the Debtor's § 341 Meeting of Creditors in her previous Chapter 7 took place on June 18, 2024. ECF No. 36, p. 2, ¶ 6; *see also* No. 24-31149, ECF No. 6. The Debtor failed to timely file a reaffirmation agreement by the 45-day deadline of August 16, 2024. Given that the Debtor also did not attempt to redeem the Collateral within that 45-day window, the Debtor had no right to retain the Collateral.

Retention of the Collateral from August 16, 2024 onward was expressly prohibited by the Bankruptcy Code, and that violation triggered the remedies specified under § 521(a)(6)(*). Additionally, the Court notes that § 521(d) was also applicable after August 16, 2024. Section 521(d)—which pertains to the applicability of a secured creditor's *ipso facto* clause—specifies that if a debtor fails to abide by § 521(a)(6), "nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default."

11 U.S.C. § 521(d). As the Honorable Russell Nelms emphasized in *Francis*, this default, "coupled with the lifting of the stay, gives the lender the immediate right to exercise its state remedies, including repossession." *Francis*, 2015 WL 139520 at *5.

Unlike *Francis*, where the secured creditor did not have a valid *ipso facto* clause in place, Credit Acceptance does in this case. ECF No. 24, Ex. 1, pp. 4–5. The existence of this clause only reinforces the notion that the Debtor had no other option in her Chapter 7 but to abide by § 521(a)(6) or watch as the gates of the automatic stay lifted so that Credit Acceptance could seek repossession. There is no statutory mechanism, especially in the § 521(a)(6) context, that provides an alternative to this outcome.

The Court is likewise unconvinced of the optionality of any "backdoor ride-through" proposed in *Marquez*. The "limited circumstances" in which that option has even been considered require that a debtor "substantially complied" with her § 521(a) duties and the ruling court prevented their agreement from being finalized. *See Baker*, 390 B.R. at 529–30. Here, the Debtor does not contest that Credit Acceptance sent the Debtor's attorney a Reaffirmation Agreement on June 12, 2024, sent a reminder for the Debtor to sign it on June 26, 2024, and that neither the Debtor nor her attorney ever responded or signed the Agreement. ECF No. 36, pp. 2–3, ¶¶ 8–10.

There is nothing in the record to indicate even an attempt by the Debtor to comply with her § 521(a)(6) duties, let alone "substantial" compliance. Therefore, the Court finds that the Debtor violated § 521(a)(6) by failing to reaffirm or redeem the Collateral and was prohibited from attempting to "ride-through" and retain possession after the 45-day window passed in her Chapter 7 case.

### B.  Section 521(a)(6) and Chapter 20 cases

14

In most cases, the Court's analysis would likely end here. A debtor's failure to reaffirm or redeem would trigger the termination of the automatic stay and the removal of the collateral from the property of the estate under § 521(a)(6)(*), the secured creditor's *ipso facto* clause would place that debtor in default, and the secured creditor could seek immediate repossession under applicable nonbankruptcy law. This case, however, presents a different wrinkle—the Debtor, seven days after her Chapter 7 case was discharged, filed a subsequent Chapter 13 case.

Despite the clarity the Fifth Circuit has provided regarding the elimination of the "ride-through" option under § 521(a), very few courts have been called upon to address the issue in the Chapter 20 context. Therefore, cases like *Law*, *Sun Finance*, or *Marquez* do not automatically resolve the dispute in Credit Acceptance's favor.

The closest parallel to this case is *Francis*, which specifically addressed Chapter 20 filings post-BAPCPA, but in the § 521(a)(2) context. In *Francis*, a debtor filed Chapter 7, failed to reaffirm, redeem, or surrender her truck pursuant to § 521(a)(2), received a discharge in April 2014, and then subsequently filed a Chapter 13 case in July 2014, seeking to include the debt owed on her truck within her Chapter 13 plan. *Francis,* 2015 WL 139520 at *1. The secured lender argued that the debtor's violation of subsections 521(a)(2) and (a)(6) compelled the court to find that she was precluded from attempting to keep possession of the truck under Chapter 13. *Id*. To support its position, the secured lender relied on the *Sun Finance* holding that § 521 is explicit—any attempt to choose another option beyond reaffirmation or redemption is barred by the statute. *Id*. at *1–2.

Judge Nelms disagreed, relying primarily on two significant variables. First, the Supreme Court's holding in *Johnson* suggests that a debtor is "entitled" to retain their collateral and restructure the debt on it in a subsequent Chapter 13. *Id*. at *3; *see also Johnson*, 501 U.S. at 87

(holding that "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief"). Second, *Sun Finance* did not involve a Chapter 20, and therefore the Fifth Circuit was not obligated in that case to decide whether § 521(a)(2)'s previous version "precluded a debtor from restructuring in Chapter 13 a debt that had not been reaffirmed in a prior Chapter 7." *Francis,* 2015 WL 139520 at * 3.

As the Debtor points out to the Court, *Francis* ultimately holds that Congress's enactment of §§ 521(a)(2) and 362(h) did not overrule the Supreme Court's holding in *Johnson*, and therefore did not preclude the debtor in that case from including the debt remaining on a vehicle in a subsequent Chapter 13 plan, despite neither reaffirming nor redeeming the collateral in their Chapter 7. *Id.* at *4–5. Judge Nelms emphasized that, "Congress knows how to preclude serial filings when it chooses to do so," and the fact that BAPCPA enacted both §§ 362(c) and 1328(f)(1) to combat serial filings underscores the presumption that Congress "recognized that they would continue to occur." *Id.* Had Congress chosen to overrule *Johnson*, "it would have made that intent clear." *Id.* Because Congress failed to do so, *Johnson* "remains viable." *Id.*

Credit Acceptance contends that despite the holding in *Francis*, the Debtor had a duty not to retain the Collateral, and that numerous post-BAPCPA cases have solidified that debtors cannot retain possession of personal property after failing to abide by § 521(a)(6)'s requirements. ECF No. 36, pp. 6–7, ¶ 8; *In re Templin*, No. 17-13196, 2018 Bankr. LEXIS 1169, at *4 (D.N.M. Apr. 17, 2018); *see also Marquez*, 2017 WL 5438306 at *2; *McCray*, 578 B.R. at 411. Furthermore, it contends that *Francis* only established that *Johnson* was not overruled as it pertains to § 521(a)(2) and expressly chose not to evaluate whether Congress abrogated the Supreme Court's holding in *Johnson* as it relates to § 521(a)(6). ECF No. 36, pp. 7–8, ¶ 10 (citing *Francis*, 2015 WL 139520 at *3–5). As the Movant puts it, Judge Nelms allowed the debtor in *Francis* to keep her vehicle

*only* because (1) the creditor in that case, unlike Credit Acceptance, did not have a PMSI, and

therefore 11 U.S.C. § 521(a)(6) did not apply, and (2), that creditor's contract, unlike Credit

Acceptance's, did not have an *ipso facto* clause. *Id*.

Credit Acceptance's distinction of *Francis* largely hinges on Judge Nelms's statement that,

where subsections 521(a)(6) and (d) are not called into question, "[*Johnson*] governs the outcome."

*Francis,* 2015 WL 139520 at *6. It argues that *Francis* did not consider the situation before this

Court where (1) a debtor violated § 521(a)(6) and there existed a valid *ipso facto* clause under §

521(d), and (2) whether those provisions together effectively overrule *Johnson*. Credit Acceptance

argues that the applicability of these two provisions tips the scales in its favor, and that had

subsections 521(a)(6) and (d) been applicable in *Francis*, it is clear that Judge Nelms would not

have allowed the debtor to retain the property. ECF No. 36, pp. 7–8, ¶ 10.

The Movant's position is understandable, given that *Francis* expressly stated that §

521(a)(6) was essentially a codification of the *Sun Finance* holding, thereby eliminating the "ride-

through" option. *See Francis*, 2015 WL 139520 at *3 (holding that *Sun Finance* was codified with

respect to "certain obligations secured by personal property.").  However, the Court ultimately

finds the Movant's position statutorily untenable in two respects.

First, the plain text of § 521(a)(6) does not wholly endorse Credit Acceptance's position.

The Movant argues that because § 521(a)(6) expressly states that a debtor "shall . . . not retain

possession" of personal property that is not reaffirmed or redeemed in a Chapter 7, the Debtor is

prohibited from retaining the Collateral, and the Debtor's filing of a subsequent Chapter 13

proceeding does not change this outcome. ECF No. 36, p. 6, ¶ 7. Put another way, the Movant

asserts that the Debtor's argument—that § 521(a)(6) no longer applies because she is no longer a

Chapter 7 debtor—is not the application of § 521(a)(6) that Congress clearly intended, nor did

Congress envision placing a "temporal limit on the prohibition of retention of collateral." *Id*. at p. 8, ¶ 11. The strength of this interpretation largely depends on the meaning of "not retain possession."

In *Seiffert*, the Honorable Mark Mullin sought to unpack the terminology given to three different actions a debtor must take with respect to her collateral in both subsections 521(a)(2) and (a)(6): "surrender," "deliver," and "not retain possession." *See Seiffert*, 2019 Bankr. LEXIS at *9–14. *Seiffert* primarily focused on analyzing what affirmative actions are required of a debtor by each of these terms, and what remedies the court could affix based on the debtor's noncompliance with what § 521(a) required.

Judge Mullin held that the ordinary meaning of "surrender" within the "text and context of §§ 521(a)(2) and 362(h)" was "not synonymous with the term 'deliver.'" *Id*. at *9–10. Instead, "surrender" only "denotes relinquishment of any rights a debtor has in the collateral by *taking no action to resist any efforts by the creditor* to gain its collateral." *Id*. at *10 (emphasis added). Judge Mullin found that the Bankruptcy Code "uses the word 'deliver' when turning over physical possession is contemplated," and the fact that Congress did not affix that language in § 521(a)(2) meant that the statute does not require the debtor to "undertake affirmative action" to effectuate surrender. *Id*. at *10–11.

Likewise, Judge Mullin held that the ordinary meaning of the phrase "not retain possession" in § 521(a)(6) dictated a similar result, given the absence of any affirmative requirement that the debtor "deliver" their collateral to the secured creditor upon violation. *Id*. at *11–12. Judge Mullin also noted the requirement contained in § 521(a)(6)(*) that the debtor "deliver any collateral in the debtor's possession to the *trustee*" underscores that secured creditors are not afforded that same remedy under the statute. *Id*. at *12. Simply put, "[t]here is no provision

or remedy . . . in the Bankruptcy Code *if* the [d]ebtors continue to maintain possession . . . despite the 'shall not retain possession' language contained in § 521(a)(6)." *Id*. at *13 (emphasis added). Instead, the "stated remedy for secured creditors in §§ 521(a)(2) and (a)(6) is termination of the automatic stay." *Id*.

The Court draws attention to *Seiffert* because accepting the Movant's § 521(a)(6) interpretation requires the Court to determine that "not retain possession" compels lifting the stay in the Debtor's Chapter 13 case on account of the Debtor's failure to affirmatively deliver the Collateral back to Credit Acceptance. However, § 521(a)(6)(*) provides only for an explicit and exclusive remedy from the moment the Debtor continued to possess the Collateral after her 45-day deadline on August 16, 2024, until she filed her Chapter 13 on August 28, 2024. That remedy was the termination of the automatic stay in the Debtor's Chapter 7 case, removal of the Collateral from the property of the estate, the triggering of the applicable *ipso facto* clause, and the provision to Credit Acceptance of formidable statutory authority to seek immediate repossession.

For whatever reason, the facts concerning which were not put before the Court, Credit Acceptance was not able to obtain repossession in that timeframe. The Movant only argues that it is owed that same remedy in *this* case. That contention is not supported by the statute's plain text. By compelling what would essentially be a second lift of the automatic stay, the Movant is asking the Court to read additional remedies into § 521(a)(6).

The court in *Steinhaus* faced a similar situation when the secured creditor requested the court to compel surrender based on the debtor's § 521(a)(6) violation. *Steinhaus*, 349 B.R. at 698. The court declined to do so under the premise that had Congress intended to also create the remedy of an immediate order of possession, "it logically would have been included in the listing of relief in § 521(a)(6). It was not." *Id.* at 708. Expanding the remedial scope of § 521(a)(6) is "inconsistent"

with the statute's explicit text describing how secured creditors may seek relief under applicable nonbankruptcy law. *Id*. Just as the *Steinhaus* court refused to grant a motion to compel turnover under § 521(a)(6), this Court will not read a turnover remedy into § 521(a)(6) by lifting the automatic stay outside of the Chapter 7 context.

The second, and perhaps the most important, issue the Court has with Credit Acceptance's argument is its blanket contention that the newly filed Chapter 13 "does not change" the answer. Credit Acceptance overlooks a crucial portion of the *Francis* holding—the triggering of the automatic stay upon the Debtor's Chapter 13 filing. As articulated in *Francis*, when the debtor failed to timely reaffirm or redeem the collateral under § 521(a)(2), "not only did the stay lift as to the truck, but the truck ceased to be property of her *[C]hapter 7 estate*." *Francis*, 2015 WL 139520, at *5 (emphasis added). However, when the debtor subsequently filed her Chapter 13 case, Judge Nelms highlighted that, "a new (albeit temporary) stay came into effect, and the truck became property of *this estate* under [§§] 541(a) and 1306(a)." *Id*. (emphasis added).

A key distinction between the myriad cases that hail the elimination of the "ride-through" option under § 521(a)(6) is that these cases were not confronted with the existence of a separate bankruptcy case, and therefore a new automatic stay. In *Francis*, however, where the court was called upon to evaluate § 521(a)'s requirements against the backdrop of automatic stay protections, Judge Nelms found that there was nothing in §§ 521(a)(2) or 362(h) that "manifested a clear congressional intent" to do away with *Johnson*, and therefore nothing to conclude that the automatic stay in a Chapter 13 would not be re-triggered upon filing, despite it being terminated during the previous Chapter 7. *Id*.

The Court finds a similar lack of clear congressional intent to overrule *Johnson,* despite the Movant's arguments to the contrary. As previously mentioned, subsections 521(a)(2) and (a)(6)

follow relatively similar tracks. Both require certain actions by debtors within certain timeframes, and both provide remedies in the form of a termination of the automatic stay and removal of the collateral from the property of the estate if their statutory requirements are not met. However, neither provision contemplates nor provides a remedy for a *subsequent* automatic stay, if one were to go in place. Section 521(a)(6)(*), by its plain language, terminates the automatic stay of the Chapter 7 case in which the § 521(a)(6) violation occurs. Without clearer congressional directive that it applies universally to *all* subsequent filings by that Debtor, the Court will not stitch that remedy into the statute and undercut both the power of the automatic stay under § 362(a) and the principles underlying the Supreme Court's decision in *Johnson*. This is especially so given that § 362(c) is explicit as to when the automatic stay goes into effect upon serial filings. *See* 11 U.S.C. § 362(c)(3)–(4).

The only way to accept the Movant's argument is to hold that once the Debtor violated § 521(a)(6), and once the remedies in § 521(a)(6)(*) triggered, she no longer retained any legal or equitable interest in the Collateral that would constitute property of the estate under § 541(a), and would therefore be unprotected by any subsequent automatic stay. The Movant does not even attempt that argument. Even if it had, that argument would require the Court to hold that a Debtor who remains in possession (albeit wrongly) of a car that a secured creditor has not repossessed does not have a cognizable property interest within the broad parameters of § 541(a). Such a holding would elevate the rights ceded to secured creditors in possession of collateral in *City of Chicago v. Fulton* to those who never repossessed the collateral. *See generally* 592 U.S. 154 (2021). This Court declines to make that leap.

Based on the foregoing reasons, the Court cannot grant the Movant's Motion for Relief from the Automatic Stay solely due to the Debtor's violation of § 521(a)(6). Although the Court

may be inclined to give effect to the Debtor's violation of § 521(a)(6), it cannot do so in a situation where that remedy requires the Court to disregard the imposition of a new automatic stay. The time and place to enforce that provision was during the Chapter 7 case, when the 45-day deadline passed, and the automatic stay in that Chapter 7 was terminated. The imposition of the new automatic stay in Chapter 13 is an event of moment.

### C.  Lifting the Automatic Stay for Cause Pursuant to §§ 105(a) and 362(d)(1)

The parties' arguments would seemingly place the Court at an impasse. On the one hand, as the Court has exhaustively established, granting Credit Acceptance relief from the automatic stay based on its § 521(a)(6) argument would not only call upon this Court to abrogate Supreme Court case law, but would undermine the power of the automatic stay under § 362(a). On the other hand, continuing to enforce the automatic stay, in light of the Debtor's attempt to do that which she could not do in her Chapter 7 only seven days prior, would substantially erode decades of Fifth Circuit precedent holding that "ride-through" actions like the Debtor's are expressly prohibited. The Court believes a harmony can be found in utilizing Sections 105 and 362(d)(1) of the Bankruptcy Code.

Section 362(d)(1) states that, "On request of a party in interest and after notice and a hearing, a court shall grant relief from the stay provided under subsection (a) of this section . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). While "cause" is not defined in the Bankruptcy Code, the Fifth Circuit has previously found a lack of good faith to "constitute 'cause' for lifting the stay." *In re Little Creek Dev. Co*, 779 F.2d 1068, 1072 (5th Cir. 1986); *see also In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270 (Bankr. N.D. Tex. 2021) (Hale, C.J.); *Omni Lion's Run, L.P.*, 578 B.R. 394, 398

(Bankr. W.D. Tex. 2017); *In re WGMJR, Inc.*, 435 B.R. 423, 433 (Bankr S.D. Tex. 2010).[9] To

receive and maintain the benefits of the automatic stay under § 362(a), "debtors must file their

bankruptcy cases in good faith; a bad faith filing is a recognized cause for relief. *Omni Lion's Run,*

578 B.R. at 398.

The Fifth Circuit has also provided the following guidance regarding the "good faith

standard" required in bankruptcy proceedings:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation,
> a standard of good faith for the commencement, prosecution, and confirmation of
> bankruptcy proceedings. Such a standard furthers the balancing process between the
> interests of debtors and creditors which characterizes so many provisions of the bankruptcy
> laws and is necessary to legitimize the delay and costs imposed upon parties to a
> bankruptcy. [A r]equirement of good faith prevents abuse of the bankruptcy process by
> debtors whose overriding motive is to delay creditors without benefitting them in any way
> or to achieve reprehensible purposes. Moreover, a good faith standard protects the judicial
> integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e.,
> avoidance of liens, discharge of debts, marshalling and turnover of assets) available only
> to those debtors with 'clean hands.'

*Little Creek*, 779 F.2d at 1071 (internal quotations omitted). Determining whether the debtor's

filing for relief is in good faith "depends largely upon the bankruptcy court's on-the-spot

evaluation" of the debtor's financial conditions and motives, and findings of bad faith are routinely

"based on a conglomerate of factors rather than on any single datum." *Id.* at 1072.

In the Chapter 20 context, courts have also been forced to grapple with what constitutes

"good faith" in both the Chapter 13 petition and plan confirmation context. *See In re Cushman*,

217 B.R. 470, 475 (Bankr. E.D. Va. 1998) ("Whether a plan has been proposed in 'good faith' is

an 'elastic' concept that requires a factual determination on a case-by-case basis."); *see also In re*

*Fazzary*, 530 B.R. 903, 906 (Bankr. M.D. Fla. 2015); *In re Pollard*, No. 10-17396, 2011 WL

576599, at *2 (Bankr. D. Md. Feb. 9, 2011). Regardless, these same courts have acknowledged

---

[9] The Fifth Circuit also noted that bankruptcy courts across numerous districts are in alignment on this principle. See
*Little Creek*, 779 F.2d at 1074 n.2; *see, e.g., In re Thirtieth Place, Inc.*, 30 B.R. 503, 505–06 (B.A.P. 9th Cir. 1983).

that, while it is clear that Chapter 20's are not prohibited *per se*, "such cases are not favored and must be closely scrutinized." *Cushman*, 217 B.R. at 476. This scrutiny derives from the premise that a debtor who goes through the Chapter 20 process can potentially obtain the "benefits" of both Chapter 7 and Chapter 13 while "circumventing at least some of their burdens." *Id*. Even if filing a Chapter 13 petition after a Chapter 7 petition does not, on its own, indicate that the second filing is in bad faith, courts will also consider the "totality of the circumstances surrounding the filing" in making that determination. *Fazzary*, 530 B.R. at 906.

Additional scrutiny may also be warranted when the Chapter 20 filing occurs in the wake of a debtor's immediate failure to reaffirm or redeem the collateral pursuant to § 521(a). In *Marquez*, while not a Chapter 20 case, the Honorable Ronald King echoed the Eleventh Circuit's sentiments that "allowing retention of the property without reaffirmation or redemption would be tantamount to forcing the creditor into a *de facto* reaffirmation agreement with no recourse against the debtor." *Marquez*, 2017 WL 5438306 at * 3 (quoting *Taylor v. AGE Fed. Credit Union* (*In re Taylor*), 3 F.3d 1512 (11th Cir. 1993) (internal quotations omitted)). As Judge King aptly put it, allowing a debtor to neither reaffirm nor redeem, but continue making payments on the collateral, gives the debtor not just a "fresh start" but a "head start" in terms of converting the secured obligation from "recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." *Id.* (internal quotations omitted).

Each of these considerations amounts to a heightened scrutiny of good faith in a Chapter 20 filing, and therefore sufficient "cause" under § 362(d)(1) to lift the automatic stay. *Fazzary*, 530 B.R. at 906. The following factors have been considered:

> [1] The proximity in time of the chapter 13 filing to the chapter 7 filing; [2] Whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a chapter 13 plan; [3] Whether the two filings accomplish a result that is not permitted in

either chapter standing alone; and [4] Whether the two filings treat creditors in a
fundamentally fair and equitable manner or whether they are rather an attempt to
manipulate the bankruptcy system or are an abuse of the purpose and spirit of the
Bankruptcy Code.

*Pollard*, 2011 WL 576599 at *2.

The Court believes this case, given the above-referenced factors and longstanding Fifth

Circuit precedent preventing the "ride-through" option under § 521(a), presents a textbook

example of a bad faith Chapter 20 filing by the Debtor. First, proximity in time between the

Debtor's two filings is significant. The Debtor received her discharge in her Chapter 7 case on

August 21, 2024, the case was closed the same day, and she then subsequently filed her Chapter

13 case seven days later. ECF No. 36, p. 3, ¶¶ 11–13. In a vacuum, the timing of the two cases is

not dispositive of bad faith, but nevertheless a factor. *See Fazzary*, 530 B.R. at 905 (finding that

the debtor did not file their Chapter 20 for a "proper purpose" based on a three-week interval

between their two cases in conjunction with their inability to show they could make their plan

payments).

Even the case most favorable to the Debtor—*Francis*—involved a four-month separation

between the debtor's discharge and their subsequent Chapter 13 petition. *See Francis*, 2015 WL

139520 at *1. Although bad faith was not under consideration in *Francis*, there is a tremendous

difference in upholding a debtor's Chapter 20 when it is separated by four months and doing so

after a debtor waits a mere seven days.

As for the second factor and whether the Debtor has incurred any "change in

circumstances" since her Chapter 7 that would make a second filing more "appropriate," the Court

notes the significant similarities between the Debtor's Chapter 7 Schedule D and the Debtor's

Chapter 13 Plan, as they pertain to Credit Acceptance. *Compare* No. 24-31449, ECF No. 9, p. 10,

*with* No. 24-32587, ECF No. 13, p. 4. In other words, Credit Acceptance remains the Debtor's only secured creditor across both cases and is in fact, post-discharge, the Debtor's *only* creditor at all in her Chapter 13. ECF No. 13, pp. 3–4. It is hard for the Court to find any significant financial change for the Debtor that might provide her a good faith justification as to this factor.

The most dispositive factor for the Court is the third—whether the Debtor's two filings "accomplish a result" that she would not be permitted in either case by itself. As Credit Acceptance rightly points out, the Debtor, through filing a Chapter 13, is essentially attempting to redeem the Collateral by installments. ECF No. 36, p. 4, ¶ 3. Bankruptcy courts have consistently noted that § 722 "does not permit redemption by means of installment payments over time." *Cushman*, 217 B.R. at 478; *accord In re Harper*, 143 B.R. 682, 685 (Bankr. W.D. Tex. 1992) ("[R]edemption requires a lump sum payment."); *In re Zimmerman*, 4 B.R. 739, 741 (Bankr. S.D. Cal. 1980). Section 722 explicitly states that an individual debtor may "redeem tangible personal property . . . by paying the holder of such lien the amount of the allowed secured claim . . . *in full at the time of redemption*." 11 U.S.C. § 722 (emphasis added). Here, by retaining the Collateral post-Chapter 7 without reaffirmation, and then including it in her Chapter 13 Plan, the Debtor would be attempting an end-run around what Chapter 7 requires for redemption.

Finally, considering whether the Debtor's Chapter 20 is an "attempt to manipulate the bankruptcy system," the Court once again finds that the above-mentioned factors solidify that the Debtor's motives in filing her Chapter 13 are, at the very least, not conducive with bankruptcy policy. Although the Debtor chose not to seek an evidentiary hearing, the Debtor does not dispute that she (1) stated her intention to reaffirm her secured debt in her prior Chapter 7, (2) refused to sign the reaffirmation agreement, (3) ignored the Movant's attempts to contact her during her 45-day window to reaffirm, and then (4) proceeded to file another bankruptcy immediately in an

attempt to keep the Collateral rather than allow Credit Acceptance to seek repossession. This, at its core, is a "ride-through" attempt, statutorily prohibited by § 521(a)(6) and expressly forbidden under Fifth Circuit precedent. Accordingly, the Debtor's Chapter 13 filing lacks any indicia of good faith.

Likewise, the Court also finds that it is within its authority under § 105(a) of the Bankruptcy Code to grant the Lift Stay Motion as well. Section 105(a) provides:

> The Court *may issue any order*, process, or judgment that is necessary or appropriate to carry out the provision of this title.  No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or *to prevent abuse of process*.

11. U.S.C. § 105(a) (emphasis added).

The Supreme Court made clear in *Marrama v. Citizens Bank of Massachusetts* that bankruptcy courts have "broad authority" to take any "necessary or appropriate" action to prevent a debtor's abuse of process under § 105(a). 549 U.S. 365, 374–75 (2007). This is especially important in cases involving debtors who are not "entitled to the relief available to the typical debtor." *Id*. (discussing whether a debtor's pre-petition fraudulent behavior precluded their ability to convert their Chapter 7 case to a Chapter 13). Although "abuse of process" may not be defined in the Bankruptcy Code, the Court echoes the holding of the Bankruptcy Court for the Southern District of Texas in *Trevino* that abuse of process is essentially comprised of "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." *In re Trevino*, 615 B.R. 108, 128 (Bankr. S.D. Tex. 2020).

Here, it is difficult for the Court to categorize the Debtor's Chapter 20 filing as anything other than a "maneuver" to maintain possession of her Collateral after uncontroverted noncompliance with § 521(a)(6) in her previous Chapter 7. The Debtor simply has not supplied a

justifiable reason that would entitle her to relief of the typical "honest but unfortunate debtor."

*Marrama*, 549 U.S. at 374 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (citation omitted)

(internal quotations omitted)). While the Debtor may have escaped the remedial grasp of §

521(a)(6) through filing her Chapter 20 case, that does not mean she can cloak herself with the

Chapter 13 automatic stay and absolve her failure to comply with the Bankruptcy Code in her

previous case. That action, without any attempted showing of good faith by the Debtor, constitutes

abuse of process.

### IV.    Conclusion

For the foregoing reasons, the Court finds that the Movant—Credit Acceptance—is entitled

to relief from the automatic stay under § 362(d) of the Bankruptcy Code for "cause", based on a

finding of the Debtor's lack of good faith in filing her Chapter 13 case and an abuse of process.

The automatic stay will lift, and the Movant will be permitted to pursue all applicable remedies

under non-bankruptcy state law.

It is therefore, **ORDERED, ADJUDGED, AND DECREED THAT**:

The Movant's Motion for Relief from the Automatic Stay is **GRANTED**.

**### END OF ORDER ###**
